| | |
|---|---|
| CALVIN ANDREW ROUSSELL | CIVIL ACTION |
| VERSUS | NO. 17-846 |
| JAMES D. CALDWELL | SECTION: "I"(3) |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Calvin Andrew Roussell, is a state prisoner incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. On July 15, 2011, he was convicted of aggravated burglary under Louisiana law.[1] On September 12, 2011, he was sentenced to a term of twenty-five years imprisonment.[2] On July 25, 2013, the Louisiana First Circuit Court of Appeal affirmed

---

[1] State Rec., Vol. 3 of 4, trial transcript, p. 962; State Rec., Vol. 1 of 4, minute entry dated July 15, 2011; State Rec., Vol. 1 of 4, jury verdict form.
[2] State Rec., Vol. 3 of 4, transcript of September 12, 2011, p. 9; State Rec., Vol. 1 of 4, minute entry dated September 12, 2011.

his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ applications on March 14, 2014.[4]

On March 13, 2015, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on October 22, 2015.[6]  The Louisiana First Circuit Court of Appeal likewise denied his related writ applications on March 7, 2016,[7] and May 2, 2016.[8] He then filed two writ applications with the Louisiana Supreme Court.  On January 9, 2017, the court denied one of those applications on the merits[9] and refused to consider the other because it was not timely filed.[10]

On January 24, 2017, petitioner filed the instant federal application seeking habeas corpus relief.[11]  The state filed a response conceding that the application was timely.[12]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[3] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.
[4] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.
[5] State Rec., Vol. 3 of 4.
[6] State Rec., Vol. 3 of 4, Judgment dated October 22, 2015.
[7] State v. Roussell, No. 2016 KW 0058 (La. App. 1st Cir. Mar. 7, 2016); State Rec., Vol. 3 of 4.
[8] State v. Roussell, No. 2016 KW 0313 (La. App. 1st Cir. May 2, 2016); State Rec., Vol. 3 of 4.
[9] State v. Roussell, 208 So.3d 371 (La. 2017); State Rec., Vol. 4 of 4.
[10] State ex rel. Roussell v. State, No. 2016-KH-0976, 2017 WL 345175 (La. Jan. 9, 2017); State Rec., Vol. 4 of 4.
[11] Rec. Doc. 1.
[12] Rec. Doc. 12.

state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> During the early morning hours of May 10, 2010 in Houma, Louisiana, intruders broke into a house occupied by Francisco Gonzales, Elmer Gomez, and Lester Escortia Herrera. Herrera was awakened between 1:00 a.m. and 2:00 a.m.

with one intruder pressing a knife to his neck and another standing in his bedroom. After taking approximately $430 to $450 from Herrera's discarded pants, and $70 and a set of car keys from Gomez's shorts, the intruders left the house. The victims subsequently identified the defendant as one of the perpetrators, and he was arrested and charged with aggravated burglary.[13]

### III. Petitioner's Claims

### A. Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> The defendant argues the evidence was insufficient to support the conviction because it failed to exclude his hypothesis that he was innocent and misidentified. He claims that he did not match the description given by the victims in regard to height and build and that he has prominent and distinctive tattoos on his face and neck, but the victims described their assailant as only having tattoos on his arms.
>
> In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also, La.Code Crim. Pro. art. 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). Aggravated burglary is "the unauthorized entering of any inhabited dwelling ... where a person is present, with the intent to commit a felony or any theft therein, if the offender ... is armed with a dangerous weapon ... or commits a battery upon any person while in such place, or in entering or leaving such place." La. R.S. 14:60. The defendant's claim that he did not match the description given by the victims in regard to height and build is based on the initial offense report that says the victims described the suspect alleged to be the defendant (who was 6'3" tall and 275 lbs. at booking), as the slimmer of the two suspects and standing 5'6" to 5'10" tall.
>
> Officer Nethery, the reporting officer, testified that he does not speak Spanish and had difficulty communicating with the victims, who are natives of Mexico and Nicaragua and speak limited English. He used hand gestures to approximate the height and build of the suspects. Officer Nethery recorded only a range for the suspect's height because the reporting equipment he used required it.
>
> Regarding the defendant's face and neck tattoos, Officer Nethery testified he pointed to his own tattoos to ask the victims if the intruders had tattoos. Gomez

---

[13] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046, at *1 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.

said the word "tattoo" and, according to Officer Nethery, "kept running his hand on the side of his face." Officer Nethery testified it was clear Gomez was describing a neck tattoo, but it was not clear whether he was also indicating a facial tattoo. Detective Detiveaux testified that the victims stated the suspect had tattoos on his neck and face.

As previously described, all three victims made positive out-of-court and in-court identifications of the defendant. After a thorough review of the record, we are convinced that any rational trier of fact viewing the evidence in the light most favorable to the State could have found beyond a reasonable doubt that the defendant was guilty of aggravated burglary. The verdict indicates the jury accepted the testimony of witnesses presented by the State and rejected the defendant's attempts to discredit those witnesses. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). In reviewing the evidence, we cannot say the jury's determination was not rational based upon the facts and circumstances presented.

This assignment of error is without merit.[14]

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[15]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor

---

[14] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046, at *9-10 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.
[15] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that he has made no such showing.

As correctly noted by the Louisiana First Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus

proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

In the instant case, the elements of the crime and petitioner's guilt were established through the victims' testimony, and it is clear that a victim's testimony alone is generally sufficient evidence to support a conviction. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); Dickerson v. Cain, Civ. Action No. 15-6277, 2017 WL 2062954, at *7 (E.D. La. Apr. 11, 2017), adopted, 2017 WL 2105110 (E.D. La. May 12, 2017); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995). To the extent that petitioner is arguing that the jurors should not have found the victims and other witnesses credible, that simply is not for this Court to say. Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility. See Schlup v. Delo, 513

U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

For all of these reasons, it simply cannot be said that the guilty verdicts in this case were *irrational* when the evidence is viewed *in the light most favorable to the prosecution*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

### B.  Denial of Motions to Suppress

Petitioner's second claim is that the state district court erroneously denied his motions to suppress the identifications and his statements. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> The defendant filed a motion to suppress identifications arguing that the procedures used to identify him were "clearly suggestive" and that his identification was tainted by police suggestion, and a motion to suppress statements arguing the State failed to produce a written waiver of rights form signed by him and that he was not properly given his Miranda rights.[FN 1] The trial court denied both motions.

> [FN 1]  Miranda v. Arizona, 384 U.S. 436 (1966).

When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, that is, unless such ruling is not supported by the evidence. See, State v. Green, 94-0887 (La. 5/22/95), 655 So.2d 272, 280-81. Legal findings, however, are subject to a *de novo* review. See, State v. Welch, 11-0274 (La. 4/29/11), 60 So.3d 603; State v. Hunt, 09-1589 (La. 12/1/09), 25 So.3d 746, 751.

## A. Motion to Suppress Identification

To suppress an identification, the defendant must prove the identification procedure was suggestive and that the totality of circumstances presented a likelihood of misidentification. State v. Sparks, 88–0017 (La. 5/11/11), 68 So.3d 435, 477, cert. denied, El-Mumit v. Louisiana, —— U.S. —— (2012). An identification procedure is suggestive if, during the procedure, the witness's attention is unduly focused on the defendant. For this reason, identifications using single-photograph displays are generally viewed with suspicion. Sparks, 68 So.3d at 477. However, the suggestive nature of an identification does not per se preclude admissibility unless the identification is untrustworthy under the totality of the circumstances. The central question in determining admissibility of an identification is whether the actual identification was reliable. Sparks, 68 So.3d at 477.

In determining whether the reliability of an identification outweighs the suggestiveness of the identification procedure, the court is directed to look to several factors: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Sparks, 68 So.3d at 477.

The circumstances leading to the identification of the defendant were described at the suppression hearing. After speaking to the victims and obtaining descriptions, the investigating officers began searching for the suspects and visited a nearby gas station where the clerks indicated they had seen two men matching the suspects' descriptions. Officer Matthew Nethery reviewed the store's surveillance tape from 2:30 a.m. and saw persons in the tape that matched the suspects' descriptions. Officer Mike Toups was at the gas station and used his cell phone to take photographs of the surveillance tape showing the men. He separately showed the victims the photographs, and each victim identified the subjects in the photos as the men who robbed them. Officer Nethery testified that they made no threats or promises to the victims to influence their identifications, nor did the officers suggest that the persons in the photographs were the intruders.[FN 2]

> [FN 2]  Looking at the photos in evidence, the trial court also identified the defendant as the person in one of the video surveillance film photographs shown to the victims.

Detective Dexter Detiveaux testified that he viewed the surveillance video and later determined the name of the defendant in the video. He then obtained a photograph of the defendant from either a prior arrest or from a driver's license photograph. According to Detective Detiveaux, there was a "very, very strong resemblance" between the photograph and one of the men in the surveillance video. He then prepared a six-photograph display, including photographs of the defendant and five men of similar age, weight, and race, using software which searched previous arrest photographs and driver's license photographs to identify individuals with similar physical characteristics. As with the surveillance video identifications, the victims each separately viewed the photograph display and identified the defendant as one of the perpetrators.

The defendant argues that presenting the victims with the officer's cell phone photographs of the surveillance video "lent credibility to the idea" that the person viewed in the photographs was the guilty party. The defendant also argues that the six-photograph display was unduly suggestive because the defendant was the only person in the display with facial tattoos.[FN 3]

[FN 3] At trial, Gomez described one of the intruders as having a "teardrop" tattoo.

We find no error or clear abuse of discretion in the trial court's determination that both identification procedures were fair and not unduly suggestive. The out-of-court identifications through the surveillance video photographs were close in time to the commission of a violent crime and were necessary to timely identify and apprehend the suspects. The out-of-court identification through the six-photograph display used photographs of men of similar size and features of the defendant so as to require the victims to discern the perpetrator. The photographs of persons other than the suspect are sufficiently similar so as not to unduly focus attention on the suspect. Although the defendant was the only person in the photograph display with a facial tattoo, all had facial hair or other facial characteristics that resembled the defendant's description. From the defendant's photo, the mark below his eye is not distinguishable as a "teardrop tattoo." To require that the photographic display include other persons who look similar to the defendant and have a "teardrop tattoo" is unreasonable. We find that the photographic display was not unduly suggestive.

Even if the out-of-court identifications were unduly suggestive, which we find they were not, the identifications were reliable under the totality of the circumstances. The photographs of the video surveillance tape were shown to the victims approximately thirty minutes after the offense and produced separate, positive identifications of the defendant from each of the three victims. During the offense, the victims viewed the intruders from close range, with a light on inside the home, and for an extended period. They had good reason to pay careful attention because one of the perpetrators was armed with a knife that he held to the throat of one of the victims. The high degree of attention given by the victims was

demonstrated by the fact that, although challenged by speaking a different language, they gave detailed descriptions of their assailants.

From the initial description given to officers immediately after the crime, to the identification through the surveillance video photographs, to the identifications from the photographic display, and finally to the in-court identification, the victims never wavered from their identification of the defendant as one of the perpetrators. Considering the totality of the circumstances, we find the out-of-court identifications were reliable, and the defendant failed to show a substantial likelihood of misidentification. This assignment of error is without merit.

## B. Motion to Suppress Statements

The State has the burden of proving the admissibility of a purported confession or statement by the defendant. La.Code Crim. Pro. art. 703D. The State must affirmatively prove that the confession or statement was given free and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451. The State must also establish that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. A signed waiver of rights form is not required, and another officer need not substantiate that such rights were given to the defendant. The State need only prove that the defendant was given the Miranda rights. State v. Thomas, 504 So.2d 907, 915-16 (La.App. 1 Cir.), writ denied, 507 So.2d 225 (La. 1987).

The trial court's conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. Whether or not a showing of voluntariness has been made depends on the facts and circumstances of each case and is analyzed on a case-by-case basis. The trial court must consider the totality of the circumstances in deciding whether or not a confession is admissible. State v. Plain, 99-1112 (La.App. 1 Cir. 2/18/00), 752 So.2d 337, 342.

Mark Arceneaux, a former deputy with the Terrebonne Parish Sheriff's Office, testified at the hearing that he and Deputy Leeann Fitch executed an outstanding arrest warrant for the defendant on June 27, 2010, at 9:19 p.m. Deputy Fitch read the defendant his Miranda rights from a card, and the defendant indicated that he understood those rights. According to Deputy Arceneaux, the defendant then spoke to him freely and voluntarily, and without any force, coercion, or threats and without any promises made to the defendant.[FN 4]

> [FN 4]  When questioned, the defendant denied committing the offense but stated that he had been with "Matt" that night and that Matt had a knife. The defendant positively identified a photograph of Matt Elderton as "Matt," and Elderton was eventually charged with committing this crime along with the defendant.

On appeal, the defense argues that the circumstances do not demonstrate that the defendant understood the rights he was foregoing because "the statements were not taken with the formalities of a custodial investigation." For support, the defense relies upon the lack of a written <u>Miranda</u> waiver form and Deputy Arceneaux's characterization of the exchange as "talking" as opposed to an "interrogation."

We find no clear abuse of discretion in the trial court's denial of the motion to suppress statements. The State established that the defendant's statements were free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. It also established the defendant was advised of and waived his <u>Miranda</u> rights prior to making the statements. This assignment of error is without merit.[16]

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[17]

With respect to petitioner's claim concerning the identifications, the state court, as noted, found that the identification procedures were not unduly suggestive and that, even if they could be considered unduly suggestive, the identifications were nevertheless reliable under the totality of the circumstances. Because the state court denied the claim on the merits, and because the claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting the claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Coleman v. Quarterman</u>, 456 F.3d 537, 544 (5th Cir. 2006); <u>Walker v. Vannoy</u>, Civ. Action No. 15-6809, 2016 WL 7485675, at *11 (E.D. La. Sept. 9, 2016), <u>adopted</u>, 2016 WL 7476334 (E.D. La. Dec. 29, 2016). For the following reasons, it is evident that petitioner has not made the required showing.

---

[16] <u>State v. Roussell</u>, No. 2012 KA 1792, 2013 WL 3875046, at *1-4 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.
[17] <u>State v. Roussell</u>, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); <u>State v. Roussell</u>, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

As the state court correctly recognized, the law with respect to such claims is clear:

A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.

Coleman, 456 F.3d at 544 (quotation marks omitted).

With respect to the first prong of the analysis, petitioner makes several arguments, the best of which is that (1) the officer's actions in showing the photograph from the surveillance tape was unduly suggestive and (2) once the seed had been planted in the victims' minds that the persons in the surveillance tape were the burglars, the taint from the original identification carried over to the subsequent identification obtained by using the photo array.[18] The undersigned in is fact given pause by the officer's actions in that respect. Showing the victim of a crime a single photograph of a suspect is generally considered impermissibly suggestive. See, e.g., United States v. Sanchez, 988 F.2d 1384, 1389 (5th Cir. 1993) ("The Supreme Court, in Manson v. Brathwaite, made clear that exhibiting a single photograph for identification purposes is impermissibly suggestive."). Moreover, the officer's action was of questionable necessity. The officer prepared the photo array

---

[18] Out of an abundance of caution, the Court notes in particular that it is unpersuaded by petitioner's argument that the photo array was unduly suggestive due merely to the fact that only his photograph pictured an individual with a face tattoo. As the United States Fifth Circuit Court of Appeals explained in rejecting a similar claim:

Lee's argument that the fact that the police lineup from which numerous witnesses selected Lee contained no other photographs of a man with a tattoo on his face makes it impermissibly suggestive is similarly unavailing. The government is not required to fill a lineup with other photos of men of roughly Lee's age, hair, and skin tone, all of whom have tattoos on their faces. As we have noted, "[p]olice stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required." Swicegood v. Alabama, 577 F.2d 1322, 1327 (5th Cir.1978) (quoting United States v. Lewis, 547 F.2d 1030, 1035 (8th Cir. 1976)). Disparity in physical appearance among the lineup photos is not enough to render an identification suggestive. Id.

United States v. Lang, No. 06-30124, 2007 WL 1725548, at *10 (5th Cir. June 14, 2007).

based on the photo of the persons in the surveillance tape.  Because the suspects shown in the surveillance tape were not detained or had not even been located, it is unclear why it was necessary to show the victims the photograph from the surveillance tape rather than the photo array alone.

Nevertheless, even if the Court assumes for the purposes of this decision that procedures employed could be deemed unduly suggestive, that would be only half of petitioner's battle.  As noted, in order to prevail, he must also show that, under the "totality of the circumstances," the suggestiveness led to a "substantial likelihood of irreparable misidentification."  The state court found that petitioner's claim also failed at this second step of the analysis.  As the state court correctly noted, five factors are to be considered in assessing the reliability of an identification: (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of witness' description of the perpetrator; (4) the witness' level of certainty concerning the identification; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 114-15 (1977).  In its opinion, the Louisiana First Circuit Court of Appeal addressed those factors and concluded that the identifications were reliable.  That determination was not unreasonable; on the contrary, for the reasons noted by the state court, the undersigned has reached the same conclusion.  Accordingly, in light of the deferential standards mandated by the AEDPA, petitioner's claim concerning the identification should be denied.

Petitioner's claim concerning his statement is likewise meritless.  As the state court correctly noted, the clearly established federal law with respect to such claims is Miranda v. Arizona, 384 U.S. 436 (1966).  In Miranda, the United States Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.  By custodial interrogation, we mean questioning initiated by law

enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

Miranda, 384 U.S. at 444 (footnote omitted).

In the instant case, the state court found that (1) petitioner was advised of and waived his

Miranda rights prior to making his statement and (2) the statement was free and voluntary and not

made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.

In reviewing the state court's determination on habeas review, this Court is mindful that the

voluntariness of a statement is ultimately a legal determination. See Miller v. Fenton, 474 U.S.

104, 112 (1985); Muniz v. Johnson, 132 F.3d 214, 219 (5th Cir. 1998). However, the

determination may also involve subsidiary factual determinations and mixed issues of law and

fact. Muniz, 132 F.3d at 219.

Under the standards set forth by the AEDPA, for the issues that are purely legal or mixed

law and facts, this Court must respect a state court's determination of voluntariness so long as it

was not "contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Drinkard v.

Johnson, 97 F.3d 751, 767-68 (5th Cir. 1996). Purely factual subsidiary determinations are

presumed to be correct and are overturned only if they were "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2). When challenging a state court's factual determinations, a petitioner must rebut this presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, it is evident that the state court's decision is entitled to the full measure of deference. Although petitioner notes that he did not sign a form waiving his <u>Miranda</u> rights, "a written waiver is not required under <u>Miranda</u>." <u>United States v. Montieth</u>, 662 F.3d 660, 669 (4th Cir. 2011); <u>accord</u> <u>United States v. Adams</u>, 583 F.3d 457, 467 (6th Cir. 2009) ("[A] waiver of <u>Miranda</u> rights need not be made in writing, and need not be expressly made."); <u>United States v. Murdock</u>, 491 F.3d 694, 700 (7th Cir. 2007) ("[T]he officers' failure to obtain a written waiver from [the defendant] does not render his oral waiver or subsequent confession involuntary."); <u>United States v. Miggins</u>, 302 F.3d 384, 397 (6th Cir. 2002) ("Although [the defendant] suggests that his waiver was not knowingly, voluntarily and intelligently made because he did not sign a waiver form listing his rights, he offers no authority, and none can be found, for the proposition that a written waiver is necessary to establish a knowing, intelligent and voluntary waiver of <u>Miranda</u> rights."); <u>United States v. Flores</u>, 63 F.3d 1342, 1377 (5th Cir. 1995); <u>United States v. McDaniel</u>, 463 F.2d 129, 135 (5th Cir. 1972) ("[A] detainee may make statements that are quite voluntary without signing a written waiver."). In light of that fact, and the fact that he presented no evidence whatsoever to rebut the officers' testimony that he was advised of and knowingly and voluntarily waived his <u>Miranda</u> rights, there is no basis for this Court to find that the state court decision denying his claim is unreasonable.[19]

---

[19] Moreover, *even if* even if the District Judge were to find that petitioner's Fifth Amendment rights were violated, it is clear that the admission of an involuntary statement is a trial error subject to harmless error analysis. <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991). Therefore, federal habeas relief would be warranted only if that error had a "substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error

For all of these reasons, the state court decision finding that petitioner's rights were not violated as result of the denial of his motions to suppress the identification and his statements is entitled to deference in this federal proceeding. Accordingly, this claim should be denied.

## C.  Denial of Motions for Mistrial and New Trial

Petitioner's third claim is that the state district court erroneously denied his motions for mistrial and new trial.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> The defendant argues that the trial court erred in denying a motion for mistrial based upon statements made by the State during the voir dire examination concerning a defendant's failure to testify.[FN 5]  The defendant also contends that a mistrial should have been granted because of references by a witness to the criminal history of the defendant and a co-defendant.  We find no merit to either of these arguments.
>
> > [FN 5]  The defendant additionally argues that in its closing argument, the State impermissibly implied guilt from the defendant's choice to exercise his right not to take the stand and testify.  However, we do not consider that issue because the defendant failed to preserve the issue for review.  See, La.Code Crim Pro. art. 841A.
>
> **A. Statements During Voir Dire**
> The prosecutor informed a panel of prospective jurors during voir dire that one of the defendant's rights that had to be protected to ensure a fair trial was his constitutional right to "not have to take the stand and testify if he or she chooses not to."  The prosecutor explained that a defendant cannot be compelled to testify against himself or herself and that it is solely the defendant's choice whether to testify, adding that "there may be a thousand reasons why a person may choose not to testify."  He then offered "a couple of examples," including a defendant who

---

unless they can establish that it resulted in actual prejudice."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quotation marks omitted); accord Hopkins v. Cockrell, 325 F.3d 579, 583 (5th Cir. 2003).

The undersigned has no hesitation in finding that *even if* an error existed with respect to the statement was committed, it was clearly harmless under these standards.  In his statement, petitioner did not incriminate himself; on the contrary, he denied committing the offense.  In light of the compelling testimony of the victims at trial, there is simply no basis for concluding that petitioner's non-incriminating, rather innocuous statement had a substantial and injurious effect or influence in determining the jury's verdict.  Therefore, even if a constitutional violation occurred, petitioner is not entitled to relief based on this claim.

feels he is not guilty but believes he would be a bad witness, or a case where the State has not proved guilt beyond a reasonable doubt. The prosecutor then added, "Also, a lot of times ... in criminal cases they cannot produce or give to this jury a defendant's criminal history, if they have ever been arrested or convicted of anything before unless they take the stand."

Defense counsel asked to approach the bench and an unrecorded bench conference took place.[FN 6] When questioning of the jurors resumed, the prosecutor stated, "Like I was saying, there's thousands of reasons why a defendant may choose not to testify ... [b]ut the law says that a defendant in a criminal case does not have to take the stand and testify." This line of questioning concluded by the prosecutor asking:

> Can each and every one of you follow the law and promise me that you will not hold it against the defendant if he chooses not to testify? I don't know if he's going to testify or not. But can you at least promise me that you will not hold it against him?

The record reflects that no one raised their hand in response to this question, and the prosecutor conveyed his approval of their responses.

These comments by the prosecutor to the panel were preceded and followed by detailed explanations from the trial court and defense counsel of a defendant's right not to testify and the presumption of innocence. The trial court first informed the prospective jurors that "the defendant need prove nothing and that the burden is on the State to prove his guilt, the defendant has the right to remain silent." It then stated that the defendant need not testify if he does not wish to do so, and the jury may make no inference of guilt or exercise any prejudice against him if he chooses not to testify.

Defense counsel emphasized that the burden of proof never shifts to the defense to do anything and offered the following about his client's right not to testify:

> It's his right. Not mine. I can't tell him to sit down and shut up. Okay? He has that obligation. And you've all told the judge and you've all told the D.A. that you would not hold it against him. And you all will be under oath to not do it.
>
> This is -- This is a -- This is a critical part of, of a case the defense lawyer's concerned about because they're really afraid that if they don't put their client on somebody in the jury room's going to say: Well, you know, he didn't take the stand. Hell, I'd have taken the stand. All right? That would be so improper as to invalidate everything that goes on in here. And you and your fellow jurors, if you're sworn in, you would have a responsibility to report that to the Court. That's how – That's how important that particular aspect of, of his rights are.

Does everybody agree with that?

No one responded negatively to defense counsel's question.

Before exercising challenges, and outside the presence of the jurors, defense counsel moved for a mistrial arguing that the prosecutor gave too many examples of why the defendant may not testify and had "planted a seed" that the defendant may have a criminal record. The State countered that it had given several examples of why a defendant might decide not to testify and sought a commitment from the jurors not to hold it against the defendant if he exercised that right. The trial court denied the motion.

After the jury was selected, and before any evidence was taken, the trial court gave preliminary instructions on the law which included the following:

> After the opening statement by the State and the defendant, the State will present its evidence to you. When the State finishes, the defendant will have an opportunity to present his evidence to you, if any. Remember, the defendant has the right not to testify and you are not permitted to draw any conclusions or inference against him if he chooses not to testify.

The defendant asserts on appeal that the trial court erred in refusing to grant a mistrial. The determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for a mistrial will not be disturbed on appeal without abuse of that discretion. State v. Berry, 95-1610 (La.App. 1 Cir. 11/8/96), 684 So, 2d 439, 449, writ denied, 97-0278 (La. 10/10/97), 703 So.2d 603.

Louisiana Code of Criminal Procedure article 770(3) provides, in relevant part:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official during the trial or in argument, refers directly or indirectly to ...
>
> (3) The failure of the defendant, to testify in his own defense
> ….

Generally, Article 770(3) prohibits both direct and indirect references to a defendant's failure to testify. This prohibition protects a defendant from unfavorable inferences that may otherwise be drawn from his silence and, therefore, helps implement a defendant's Fifth Amendment right against self-incrimination. State v. Johnson, 541 So.2d 818, 822 (La. 1988). If the reference to defendant's failure to testify is direct, a mistrial must be granted; however, an indirect reference requires a mistrial only if the court determines that the comment was intended to

draw the jury's attention to the failure to testify.  State v. Hamilton, 92-1919 (La. 9/5/96), 681 So.2d 1217, 1225.

Violations of Article 770(3) occurring during voir dire do not constitute error when the remarks merely reference the defendant's privilege not to take the stand, address the weight to be accorded the defendant's testimony if he chooses to testify, or inform the jurors that the state bears the burden to prove guilt beyond a reasonable doubt regardless of whether the defendant presents any evidence.  State v. Shea, 421 So.2d 200, 206 (La. 1982), reversed on other grounds, Shea v. Louisiana, 470 U.S. 51 (1985); State v. Willie, 410 So.2d 1019, 1026 (La. 1982).

We must first determine whether the prosecutor's comments were a reference to the defendant's failure to testify or merely an acknowledgment of the defendant's right not to testify.  We find that the prosecutor made neither a direct nor indirect reference to the defendant's failure to testify.  Rather, the prosecutor's comments were general statements which acknowledged a defendant's right not to testify.  The prosecutor's comments cannot be construed as a reference to this defendant's refusal to testify particularly in light of the fact that the statements were made during voir dire, well before the defendant had even exercised the right.  The prosecutor also did not directly or indirectly suggest to the prospective jurors that they should infer guilt from a defendant's failure to testify should he invoke that right.  While the prosecutor did state that a defendant may invoke the right not to testify in order to prevent the disclosure of a prior criminal conviction, that statement was offered as one of several reasons why a defendant may choose to exercise the right.  The prosecutor's comments did not imply that this defendant had committed any other crimes.  Accordingly, we find no direct or indirect reference to the defendant's failure to testify.

The record also fails to establish that the statements were intended to emphasize or focus attention on the defendant's failure to testify.  As previously noted, the comments were made during voir dire before the defendant had exercised the right.  When the statements were made, the trial court had already instructed the jurors of the defendant's right not to testify and the presumption of innocence.  Counsel for the State and defense reinforced that the jurors could not infer prejudice from the defendant's decision not to testify if he chose to exercise that right.  Considering the entirety of the voir dire, we find that the trial court did not abuse its discretion in denying the motion for mistrial.  See, State v. Kenner, 336 So.2d 824, 828 (La. 1976); State v. Lewis, 97-2854 (La App. 4 Cir. 5/19/99), 736 So.2d 1004, 1016-17, writ denied, 99-2694 (La. 3/17/00), 756 So.2d 325.

This argument is without merit.

## B. Evidence of Other Crimes

The defendant argues that the trial court erred in refusing to grant a mistrial, and later a motion for new trial, because Detective Detiveaux made a reference to a prior arrest of the defendant.  We find no error in the trial court's ruling.

Louisiana Code of Criminal Procedure article 770(2) prohibits the judge, district attorney, or a court official from directly or indirectly referring to another

crime committed or alleged to have been committed by the defendant as to which evidence is not admissible and sanctions a violation with a mandatory mistrial. However, when the comment is made by a witness, Article 771 permits the trial court, upon request of the defendant or the State, to admonish the jury to disregard the comment if the comment is irrelevant or immaterial or of such a nature that it might create prejudice against the defendant or the state in the mind of the jury. In such cases, and on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. La.Code of Crim. Pro. art. 771.

During the direct examination of Detective Detiveaux, he described the sequence of events that led to the identification of the defendant, including the receipt of anonymous tips naming the defendant as one of the individuals in the photographs. Detective Detiveaux continued:

> Once we got that information, I did a database search through our, our -- We have various criminal databases we can access. And a photo was pulled up from a previous arrest. We can use previous arrests.

Defense counsel objected and moved for a mistrial, arguing the State had elicited other crimes evidence from the witness. The State countered by arguing that the statement was harmless because no information was given about the offense or whether the defendant was convicted. The trial court denied the motion for mistrial and admonished the jury to disregard and not to use the "remark about arrests" during deliberations.

After the defendant was convicted, the defense moved for a new trial, arguing that the court's ruling denying a mistrial shows prejudicial error. See, La.Code Crim. Pro. art. 851(2). The trial court denied the motion. The trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Maize, 94-0736 (La.App. 1 Cir. 5/5/95), 655 So.2d 500, 517, writ denied, 95-1894 (La. 12/15/95), 664 So.2d 451.

The trial court did not abuse its discretion in denying both the motion for mistrial and the motion for new trial. The comment was not solicited by the prosecutor. Furthermore, the information was provided as part of the narrative of events leading to the defendant's identification and arrest. It did not refer to a specific previous crime and the cause for the prior arrest was not given. We find that the reference did not substantially prejudice the defendant such that he was deprived of any reasonable expectation of a fair trial, and the admonition given by the trial court was sufficient to assure the defendant a fair trial. This assignment of error is without merit.

The defendant also contends that a mistrial should have been granted because the State referred to unrelated arrest warrants for a codefendant. When asked if Elderton was arrested on the same charge as the defendant, Detective

Detiveaux testified, "Well, he was originally -- He also had previous warrants for his arrest."

Defense counsel objected and moved for a mistrial, which the trial court denied. We find no error in that denial. The Louisiana Code of Criminal Procedure articles relating to mistrials do not contain a specific prohibition against a reference to a codefendant's prior criminal acts. Under Article 771, if a remark is irrelevant or immaterial and might create prejudice against the defendant, the trial court has the discretion to either grant a mistrial or admonish the jury. The trial court neither granted a mistrial nor admonished the jury, apparently determining that the remark did not prejudice the defendant. The victims described at least two people involved in the crime. The identification of the second suspect was part of the process of solving this crime in which the defendant was a suspect. Any connection between the defendant's guilt and his association with a person subject to outstanding arrest warrants, where no description of the bases for those warrants is provided, is so attenuated as to be of no prejudice to the defendant. This argument is without merit.[20]

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[21]

To the extent that petitioner is arguing that the state court erred in applying the state laws concerning the grant or denial of a mistrial or a new trial, such a claim is not cognizable in a federal habeas corpus proceeding. "'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Further, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding. Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Thomas v. Ieyoub, No. 93-3757, 1994 WL 286198, at *2 (5th Cir. June 22, 1994)

---

[20] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046, at *4-8 (La. App. 1st Cir. July 25, 2013) (footnote omitted); State Rec., Vol. 3 of 4.

[21] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

("[E]rrors of state law, such as a denial of a mistrial, must rise to a constitutional dimension in order to merit habeas relief."); <u>Smith v. Whitley</u>, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994) ("Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance."); <u>Dickerson v. Guste</u>, 932 F.2d 1142, 1145 (5th Cir. 1991) (petitioner's claim that the state courts violated state law in denying his motion for new trial provided no basis for federal habeas relief absent the showing of an independent violation of a federal constitutional right); <u>Allen v. Cain</u>, Civ. Action No. 15-1482, 2017 WL 713931, at *7 (E.D. La. Feb. 9, 2017), <u>adopted</u>, 2017 WL 699768 (E.D. La. Feb. 22, 2017); <u>Otero v. Louisiana</u>, Civ. Action No. 12-1332, 2013 WL 6072716, at *9 (E.D. La. Nov. 18, 2013); <u>Williams v. Cain</u>, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *25 (E.D. La. May 7, 2009), <u>aff'd</u>, 359 Fed. App'x 462 (5th Cir. 2009); <u>Talley v. Cain</u>, Civ. Action No. 08-3542, 2009 WL 916331, at *15 (E.D. La. Apr. 6, 2009).

Moreover, the Court rejects any contention that the state's action somehow violated federal law. A reference during voir dire to a defendant's right not to testify is neither uncommon nor improper so long as there is no indication that the comment was meant to undermine his presumption of innocence. <u>See, e.g.</u>, <u>Cox v. Stephens</u>, 602 Fed. App'x 141, 144 (5th Cir. 2015). Of course, such references cross an impermissible line when "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." <u>Davis v. United States</u>, 357 F.2d 438, 441 (5th Cir. 1966) (quoting <u>Knowles v. United States</u>, 224 F.2d 168, 170 (10th Cir. 1955)). That, however, simply is not the situation here. Nor is the Court persuaded by petitioner's argument that a different

result is mandated by the prosecutor's comment that one reason a defendant might opt not to testify would be to prevent disclosure of a criminal history. Although such a comment would be better avoided, the comment here was made in passing and merely identified as one possible reason among "thousands" why a defendant might make such a choice.[22] It cannot fairly be said that a juror would infer that was in fact the reason that this particular defendant would exercise his right not to testify. Moreover, as the state court noted, the jury was repeatedly instructed that a defendant has a right not to testify and that no adverse inference was to be drawn from the exercise of that right. As courts have repeatedly noted, jurors are presumed to follow their instructions. See, e.g., Jones v. United States, 527 U.S. 373, 394 (1999); United States v. Ornelas-Rodriguez, 12 F.3d 1339, 1349 (5th Cir. 1994).

As to petitioner's contention that he is entitled to relief based on Detective Detiveaux's reference in his testimony to the fact that petitioner had previously been arrested, that contention is likewise meritless. Although a witness's mention of a defendant's unrelated arrest can be reversible error, an inadvertent, non-responsive reference to such an arrest is not necessarily a basis for relief. See United States v. Harris, 205 Fed. App'x 230, 232 (5th Cir. 2006). Rather, "a prejudicial remark may be rendered harmless by a curative instruction to the jury," id., and such an instruction was given in this case immediately after the detective's comment.[23] That fact, coupled with the fact that no further information was elicited concerning the arrest (such as the nature of the charge on which the arrest was based or whether a conviction resulted) and the fact that there was overwhelming evidence of petitioner's guilt, leads this Court to conclude that the

---

[22] State Rec., Vol. 1 of 4, trial transcript, pp. 141-43.
[23] State Rec., Vol. 2 of 4, trial transcript, p. 584 ("Let me instruct the jury not to – Just disregard and not use that in any of your deliberations, the, the previous remark about arrests. Okay? Disregard that reference.").

comment, albeit improper, was ultimately harmless, played no role in the jury's verdict, and did not render petitioner's trial fundamentally unfair under federal law. See Sims v. Singletary, 155 F.3d 1297, 1312 (11th Cir. 1998) (in light of the identification testimony establishing petitioner's identity as the perpetrator, a witness's brief reference to petitioner being identified based on a prior "mug shot" was harmless, did not have a substantial and injurious effect or influence on the jury verdict so as to deny petitioner a fair trial, and therefore did not warrant federal habeas relief).

As to petitioner's contention that he is entitled to relief based on Detective Detiveaux's reference in his testimony to the fact that petitioner's co-defendant had previous arrest warrants, that contention also fails. For the reasons already noted, Detiveaux's reference to petitioner's *own* prior arrest does not warrant relief, and the reference to the fact that petitioner's co-defendant had prior arrest warrants is even *less prejudicial* to petitioner. Therefore, necessarily, this contention similarly fails.

Lastly, in the state courts, petitioner argued that his rights were violated by the prosecutor's reference during closing arguments to petitioner's decision not to testify. To the extent that petitioner is reurging that same claim in this Court, the claim is procedurally barred.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

<u>Finley v. Johnson</u>, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  Where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned.  <u>Id</u>. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

As noted, in the last reasoned state court opinion addressing petitioner's claim concerning the comment made during the prosecutor's closing argument, the Louisiana First Circuit Court of Appeal held that the claim was waived because there was no contemporaneous objection, stating:

> The defendant additionally argues that in its closing argument, the State impermissibly implied guilt from the defendant's choice to exercise his right not to take the stand and testify.  However, we do not consider that issue because the defendant failed to preserve the issue for review.  <u>See</u>, La.Code Crim Pro. art. 841A.[24]

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[25]

The United States Fifth Circuit Court of Appeal has clearly held that Louisiana's contemporaneous objection rule is an independent and adequate state procedural rule.  <u>Duncan v. Cain</u>, 278 F.3d 537, 541-43 (5th Cir. 2002).  Therefore, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  <u>Hughes v. Johnson</u>, 191 F.3d 607, 614 (5th Cir. 1999).  In the instant case, petitioner demonstrates neither.

---

[24] <u>State v. Roussell</u>, No. 2012 KA 1792, 2013 WL 3875046, at *4 n.5 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.

[25] <u>State v. Roussell</u>, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); <u>State v. Roussell</u>, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

"To establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). Here, petitioner has not argued, much less established, cause for this procedural default. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

In that petitioner has not met the "cause and prejudice" test, this claim is barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995). Here, petitioner presents no new evidence of the type or caliber referenced in Schlup. Moreover, ample evidence of his guilt, including the victims'

testimony, was introduced at trial. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, to the extent that petitioner is reurging his claim that his rights were violated by the prosecutor's comment during closing arguments, that claim is procedurally barred and should not be considered by this Court.

### D. Denial of Motion for a Continuance

Petitioner's fourth claim is that the state district court erroneously denied his motion for a continuance. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> The defendant argues the trial court abused its discretion in denying him a continuance due to violations of Brady v. Maryland, 373 U.S. 83 (1963) and Kyles v. Whitley, 514 U.S. 419 (1995).[FN 7]
>
> > [FN 7] We note the defense initially moved for a continuance on the basis that the severance of defendants would require a change in trial strategy, not to address Brady material.
>
> On the first day of trial, defense counsel moved for production of Brady and/or Kyles material. At a hearing on the motion, defense counsel indicated he had learned the previous day that two other men were also interrogated relative to this crime and that they could be produced at trial. The State responded that the only material in its possession was in the police report that had been provided to the defense. The State also represented that upon learning of defense counsel's contention, Detective Detiveaux was contacted and stated that he was unaware of any other suspects. The trial court denied the request for a continuance but ordered the State to turn over any Brady or Kyles material.
>
> After resumption of the trial, the defense cross-examined Detective Detiveaux about whether two men, Joseph LeBoeuf and Douglas Trahan, "had their doors knocked on and ... were taken outside for questioning." Detective Detiveaux confirmed that he just learned that information the previous day. On direct examination, Officer Nethery testified that LeBoeuf and Trahan were "people of interest" in the investigation because they lived in the same area as the victims, both had a criminal history, and one had a tattoo on his neck. When the police brought the victim, Elmer Gomez, to view LeBoeuf and Trahan for possible identification,

Gomez said he knew the men, identified them by their street nicknames, and said they were not the intruders.

The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87. Favorable evidence includes both exculpatory evidence and evidence impeaching the testimony of a witness when the reliability or credibility of that witness may be determinative of the defendant's guilt or innocence, or when it may have a direct bearing on the sentencing determination of the jury. United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150 (1972). In Kyles, the Supreme Court explained:

> Bagley held that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."
>
> Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial" (Citations omitted.)

Kyles, 514 U.S. at 433-434.

We find that the questioning of LeBoeuf and Trahan and their elimination as suspects by a victim constitutes neither Brady nor Kyles material. The fact that the officers questioned two people who they thereafter learned one of the victims knew, identified and excluded as being, the perpetrators is neither exculpatory nor favorable to the defendant. Furthermore, there is no reasonable probability that the result of the proceeding would have been different if this information had been disclosed to the defense any sooner. The State did not withhold the identity of the men from the defendant, and defense counsel cross-examined the lead detective at trial about the two men. The jury was fully informed why the men were initially "people of interest" in the investigation and why they were quickly eliminated as suspects.

This assignment of error is without merit.[26]

---

[26] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046, at *8-9 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning

additional reasons.[27] For the following reasons, it is clear that the foregoing decision rejecting this

claim was neither contrary to nor an unreasonable application of clearly established federal law.

As the United States Fifth Circuit Court of Appeals has explained:

> A motion for continuance is addressed to the sound discretion of the trial court and will not be disturbed on a direct appeal unless there is a showing that there has been an abuse of that discretion. United States v. Uptain, 531 F.2d 1281 (5th Cir. 1976); United States v. Gidley, 527 F.2d 1345 (5th Cir. 1976), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1977). When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. See Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978); Shirley v. North Carolina, 528 F.2d 819, 822 (4th Cir. 1975).
>
> The Supreme Court addressed this subject in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):
>
>> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. (Citations omitted.)

Hicks v. Wainright, 633 F.2d 1146, 1148-49 (5th Cir. 1981).

This Court simply cannot say that the trial judge abused his discretion in denying a

continuance. Petitioner contends that the defense needed a continuance due to the fact that the

---

[27] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

state had committed a <u>Brady</u> violation by failing to make a timely disclosure that Joseph LeBoeuf and Douglas Trahan were once considered as suspects.

However, as an initial matter, the Court notes that there was no underlying <u>Brady</u> violation. Upon further investigation and consultation with one of the victims, it was determined that LeBoeuf and Trahan were *not* in fact involved. "[T]here is not a <u>Brady</u> violation every time the government does not disclose an alternative suspect, especially when the other suspect was not a particularly plausible one." <u>Canales v. Stephens</u>, 765 F.3d 551, 576 (5th Cir. 2014); <u>accord</u> <u>Crawford v. Cain</u>, Civ. Action No. 04-0748, 2006 WL 1968872, at *18 (E.D. La. July 11, 2006) ("[T]he Court has considered relevant case law on how courts weigh alternative suspect evidence under <u>Brady</u>. The Court's review of the case law reveals that there is no per se rule under <u>Brady</u> requiring the government to disclose all evidence concerning alternative suspects."), <u>aff'd</u>, 248 Fed. App'x 500 (5th Cir. 2007). In addition, petitioner's <u>Brady</u> contention also fails for another reason: the information about LeBoeuf and Trahan was disclosed at the commencement of trial, and the defense was able to cross-examine Detective Detiveaux fully concerning the fact that they were at one time considered suspects. Where, as here, the evidence at issue came to light during trial in sufficient time for defense counsel to put it to effective use, it was not "suppressed" in violation of <u>Brady</u> and its progeny. <u>See, e.g.</u>, <u>Lawrence v. Lensing</u>, 42 F.3d 255, 257 (5th Cir. 1994); <u>United States v. McKinney</u>, 758 F.2d 1036, 1049-50 (5th Cir. 1985); <u>Smith v. Travis</u>, Civ. Action No. 08-4627, 2009 WL 1704335, at *10 (E.D. La. June 16, 2009); <u>Stogner v. Cain</u>, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008); <u>Baker v. Cain</u>, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007).

Because there was no <u>Brady</u> violation, and because petitioner has not established that the defense in fact needed additional time to prepare as a result of the disclosure of the information on the first day of trial, there is no basis for this Court to conclude that the trial court abused its discretion in denying the continuance.

Moreover, *even if* there had been an abuse of discretion, that alone would not warrant habeas relief; rather, as noted, a petitioner must also show that the error rendered his trial "fundamentally unfair." As the United States Fifth Circuit Court of Appeals has explained, "[t]he test applied to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." <u>Kirkpatrick v. Blackburn</u>, 777 F.2d 272, 278-79 (5th Cir. 1985). Here, is no reasonable probability that the verdict in this trial would have been different if a continuance had been granted and defense counsel had time to investigate LeBoeuf and Trahan. As already noted, the evidence showed that one of the victims, Elmer Gomez, *knew* LeBoeuf and Trahan and said they were *not* the perpetrators of the crime.

For all of these reasons, petitioner has not shown that the state court's decision denying his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, under the stringently deferential standards of review mandated by the AEDPA, this Court should likewise deny the claim.

### E. Excessive Sentence

Petitioner's fifth claim is that his sentence is excessive. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

The defendant argues the trial court imposed an unconstitutionally excessive sentence because the record does not establish his sentence was individualized and not a needless imposition of pain and suffering. The defendant was sentenced to twenty-five years at hard labor. Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years. La. R.S. 14:60.

The Louisiana Code of Criminal Procedure sets forth criteria which must be considered by the trial court before imposing sentence. La.Code Crim. Pro. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Harper, 07-0299 (La.App. 1 Cir. 9/5/07), 970 So.2d 592, 602, writ denied, 07-1921 (La. 2/15/08), 976 So.2d 173. Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. Harper, 970 So.2d at 602.

Louisiana Constitution Article I, Section 20 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 So.2d 266, 267 (La. 1982). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La. 1982); State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La. 10/5/01), 798 So.2d 962.

Prior to sentencing, the trial court carefully studied the offense involved, the defendant's record of prior offenses, and the criteria set forth in Article 894.1. At sentencing, the trial court noted that the defendant had prior felony convictions for simple robbery, second degree battery, and possession of ecstasy. The trial court found an undue risk that during the period of a suspended sentence or probation, the defendant would commit another crime; the defendant was in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution; and any lesser sentence than that imposed would deprecate the seriousness of the defendant's crime. The trial court also found numerous aggravating circumstances: the offender's conduct during the commission of the offense manifested deliberate cruelty to the victims; the offender knowingly created a risk of death or great bodily harm to more than one person; the offender used threats of or actual violence in the commission of the offense; a dangerous weapon was used in the commission of the offense by a principal; and

the offense involved multiple victims. The court found no mitigating circumstances.

A thorough review of the record reveals the trial court, adequately considered the criteria of Article 894.1 and did not abuse its discretion in imposing the sentence herein. See, La.Code Crim. Pro art. 894.1A(1)-(3), B(1), (5), (6), (10), and (11). The sentence was not grossly disproportionate to the severity of the offense, and thus was not unconstitutionally excessive.

This assignment of error is without merit.[28]

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[29]

To the extent that petitioner is now reasserting his claim that the state district court failed to comply with article 894.1, that claim simply is not cognizable in a federal habeas corpus proceeding. See, e.g., Butler v. Cain, 327 Fed. App'x 455, 457 (5th Cir. 2009) ("[Petitioner] also argues that the trial court erred in imposing the statutory maximum sentence of life imprisonment without providing sufficient reasons as required by La.Code Crim. Proc. art. 894.1(C). His claim that the trial court violated state law is not cognizable in this federal habeas proceeding."); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("Haynes also challenges the state court's failure to comply with La.Code Crim. Proc. Ann. art. 894.1, which requires courts to state for the record the reasons and factual bases for imposing a sentence, but a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus."); Quezada v. Avoyelles Correctional Center, Civ. Action No. 15-781, 2015 WL 5061230, at *27 (E.D. La. Aug. 17, 2015); Pierre v. Radar, Civ. Action No. 11-55, 2012 WL 3026790, at *6 (E.D. La. June 18, 2012), adopted, 2012 WL 3027934 (E.D. La. July 24, 2012).

---

[28] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046, at *10-11 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.

[29] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

Similarly, any other claim that petitioner's sentence is excessive or otherwise inappropriate under *Louisiana* law likewise is not cognizable in this federal proceeding. Federal habeas corpus relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, a federal habeas court will not review the legality of a petitioner's sentence under state law. See, e.g., Nyberg v. Cain, Civ. Action No. 15-98, 2015 WL 1540423, at *12 (E.D. La. Apr. 7, 2015); Phillips v. Cain, Civ. Action No. 13-5868, 2014 WL 4425751, at *10 (E.D. La. Sept. 8, 2014), adopted, 2014 WL 5080246 (E.D. La. Sept. 26, 2014); Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

On the other hand, to the extent that petitioner is claiming that his sentence is excessive under *federal* law, that claim obviously is cognizable; however, it is also meritless. It is true that petitioner's sentence is on the upper end of the applicable sentencing range. However, even if the sentence could be considered harsh for that reason, the mere fact that a sentence is harsh does not mean that it is unconstitutionally excessive. As noted below, petitioner's sentence does not cross that impermissible line.

In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant

substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." Gonzales, 121 F.3d at 943. In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses. The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check. The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

Here, petitioner's crime of aggravated burglary was particularly serious, and his sentence fell within the range provided by law. In light of those considerations, as well as the finding in Rummel that a life sentence was not excessive for the relatively minor and nonviolent offenses involved in that case, this Court cannot conclude that petitioner's twenty-five-year sentence for his much graver offense is grossly disproportionate under federal law. See, e.g., Keller v. Day, No. 92-3434, 1993 WL 481422 (5th Cir. Nov. 1, 1993) (twenty-five-year sentence for Louisiana crime of aggravated burglary was not excessive). Because the sentence is not grossly disproportionate, this Court's "inquiry is finished." Gonzales, 121 F.3d at 942.

Accordingly, for all of these reasons, petitioner's sentencing claim should be denied.

## F. Evidentiary Rulings

Petitioner's sixth claim for relief is that the state court erred in allowing admission of improper evidence. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In pro se assignment of error number 1, the defendant argues the trial court erred in allowing the State to present the surveillance video and a cell phone photograph of that video without proper certification and authentication. …
> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. Code Evid. art. 901A. For admission, it suffices if the custodial evidence establishes that it was more probable than not that the object is the one connected to the case. Moreover, any lack of positive identification or a defect, in the chair of custody goes to the weight of the evidence rather than its admissibility. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter to be determined by the jury. State v. Berry, 95-1610 (La.App. 1 Cir. 11/8/96), 684 So.2d 439, 455, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.
> The surveillance video and the photographs of that video were properly authenticated at trial. Officer Nethery identified the surveillance video as the same one he viewed at the gas station. He testified he stood with Officer Toups when Toups showed the victims the cell phone photographs of the surveillance video and he then identified the photographs  Additionally, Gonzalez testified that the

photographs of the surveillance video were the same photographs he was shown. Pro se assignment of error number 1 is without merit.[30]

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[31]

To the extent that petitioner is arguing that the state courts misapplied Louisiana's laws concerning the admissibility of evidence, such a claim is not cognizable on federal habeas review. As the United States Fifth Circuit Court of Appeals has explained: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998).

To the extent that petitioner is asserting a federal claim, he fares no better. Even if petitioner could show that the evidence in question was in fact improperly admitted, federal habeas relief still would not be warranted. The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

Even aside from the challenged evidence, there was other compelling evidence of petitioner's guilt of the instant offense, i.e. the testimony of the victims. In light of that testimony,

---

[30] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046, at *11-12 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.

[31] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

which the jury obviously found credible, it simply cannot be said that the evidence now challenged

by petitioner played a "crucial, highly significant factor" in his conviction.  See, e.g., Colbert v.

Cain, Civ. Action No. 14-2472, 2016 WL 4186551, at *18 (E.D. La. Apr. 12, 2016), adopted, 2016

WL 4161257 (E.D. La. Aug. 5, 2016).  Therefore, the admission of the evidence did not result in

a denial of fundamental fairness.

Lastly, out of an abundance of caution, the Court notes that petitioner frames this claim in

his federal application as a Confrontation Clause violation.  However, as the United States Fifth

Circuit Court of Appeals has explained:

> The Confrontation Clause of the Sixth Amendment provides that "[i]n all
> criminal prosecutions, the accused shall enjoy the right ... to be confronted with the
> witnesses against him." The Supreme Court explained in Crawford [v. Washington,
> 541 U.S. 36 (2004)] that the confrontation right bars the introduction of
> "testimonial statements" of a witness who does not appear at trial "unless he [is]
> unavailable to testify, and the defendant had [ ] a prior opportunity for cross
> examination."  This rule, however, applies only to statements offered to prove the
> truth of the matter asserted.

Dorsey v. Stephens, 720 F.3d 309, 317 (5th Cir. 2013) (footnotes omitted).  Petitioner has not

cited, and this Court has not found, any controlling federal authority for his implicit proposition

that either a surveillance video or a still photograph qualifies as a "testimonial statement" subject

to limitations of the federal Confrontation Clause.  See id. at 318 ("We have not found, and Dorsey

does not cite, any decision of the Supreme Court that clearly establishes the contours of the

Confrontation Clause when applied to facts even remotely analogous to a soundless video of a

child's responses and actions during an interview with law enforcement officials."); see also

United States v. Brooks, 772 F.3d 1161, 1167 (9th Cir. 2014) ("The photographs of the seized

parcel were not 'witnesses' against Brooks.  They did not 'bear testimony' by declaring or

affirming anything with a 'purpose.'  Therefore, their admission did not violate the Confrontation

Clause."); <u>Toliver v. Director, TDCJ-CID</u>, Civ. Action No. 6:11cv609, 2012 WL 2524376, at *10 (E.D. Tex. May 14, 2012) ("[T]he introduction of video evidence showing Petitioner selling cocaine to Wallace did not violate the Confrontation Clause as video evidence is not testimonial in nature."), <u>adopted</u>, 2012 WL 2524259 (E. D. Tex. June 29, 2012); <u>Sevin v. Parish of Jefferson</u>, 621 F. Supp. 2d 372, 383 (E.D. La. 2009) ("Because a camera is not a witness that is amenable to cross-examination, and because a photograph of a vehicle is not a 'testimonial statement,' introduction of the Redflex photographs into evidence does not implicate the Confrontation Clause.").

In summary, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject his evidentiary claims.

## G. Ineffective Assistance of Counsel

Petitioner's seventh claim is that his counsel was ineffective. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In pro se assignment of error number 2, [Roussell] argues his trial counsel was ineffective for: failing to object to the admissibility of the video and cell phone photographs; failing to call the witnesses who prepared the video and cell phone photographs; and failing to object to the State's failure to provide notice of its intent to use the video and cell phone photographs. …
> ….
> A claim of ineffective assistance of counsel is generally relegated to postconviction proceedings, unless the record permits definitive resolution on appeal. <u>State v. Miller</u>, 99-0192 (La. 9/6/00), 776 So.2d 396, 411, <u>cert. denied</u>, 531 U.S. 1194 (2001). However, where the claim, is raised as an assignment of error on direct review and where the record on appeal is adequate to resolve the matter, the claims should be addressed in the interest of judicial economy. <u>State v. Calhoun</u>, 96-0786 (La. 5/20/97), 694 So.2d 909, 914.

A claim of ineffectiveness of counsel is analyzed under the two-pronged test developed by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In order to establish that his trial attorney was ineffective, the defendant must first show that the attorney's performance was deficient, which requires a showing that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. Secondly, the defendant must prove that the deficient performance prejudiced the defense. This element requires a showing that the errors were so serious that defendant was deprived of a fair trial. The defendant must prove actual prejudice before relief will be granted. It is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. <u>State v. Serigny</u>, 610 So.2d 857, 859-60 (La.App. 1 Cir. 1992), <u>writ denied</u>, 614 So.2d 1263 (La. 1993).

We have previously determined that the challenged exhibits were sufficiently authenticated at trial. Consequently, defense counsel did not perform deficiently in failing to object to their introduction into evidence. <u>See</u>, <u>State</u> <u>ex rel.</u> <u>Roper v. Cain</u>, 99-2173 (La.App. 1 Cir. 10/26/99), 763 So.2d 1, 5 (<i>per curiam</i>), <u>writ denied</u>, 00-0975 (La. 11/17/00), 773 So.2d 733 ("If the substantive issue an attorney failed to raise has no merit, then the claim the attorney was ineffective for failing to raise the issue also has no merit.").

Defense counsel's decisions concerning which witnesses to subpoena for trial and whether to object to the sufficiency of notice concerning evidence were matters of trial strategy. The investigation of strategy decisions requires an evidentiary hearing and, therefore, cannot possibly be reviewed on appeal. <u>State v. Allen</u>, 94-1941 (La.App. 1 Cir. 11/9/95), 664 So.2d 1264, 1271, <u>writ denied</u>, 95-2946 (La. 3/15/96), 669 So.2d 433.[FN 8] Further, under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rest with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. <u>State v. Folse</u>, 623 So.2d 59, 71 (La.App. 1 Cir.1993). Pro se assignment of error number 2 is without merit or otherwise not subject to appellate review.

> [FN 8] The defendant would have to satisfy the requirements of Louisiana Code of Criminal Procedure article 924, <i>et seq.</i>, to receive such a hearing.[32]

---

[32] <u>State v. Roussell</u>, No. 2012 KA 1792, 2013 WL 3875046, at *11-13 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[33]

As the state court correctly noted, the United States Supreme Court established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting

---

[33] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.

Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Because an ineffective assistance claim presents a mixed question of law and fact, this Court must defer to a state court decision denying such a claim on the merits unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation

marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

With respect to petitioner's contention that counsel was ineffective for failing to object to the admissibility of the video and cell phone photographs, that contention clearly fails. On appeal, the state courts found that the evidence was properly admitted under state law; therefore, any objection to the evidence would have been meritless. "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner's remaining contentions (i.e. that counsel was ineffective for failing (1) to call the individuals who prepared the video and cell phone photographs to testify at trial and (2) to object to the State's failure to provide notice of its intent to use the video and cell phone photographs) were not considered by the state courts on direct appeal because they would be more properly asserted on post-conviction review. However, although petitioner subsequently sought post-conviction relief, he did not raise these contentions. As a result, these components of petitioner's ineffective assistance claim have never been fairly presented to the state courts and, therefore, are unexhausted. See 28 U.S.C. §2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -- the applicant has exhausted the remedies available in the courts of

the State …."); <u>Carty v. Thaler</u>, 583 F.3d 244, 253-54 (5th Cir. 2009) ("When undertaking review, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts. To fairly present the claims, the applicant must present his claims in a procedurally correct manner. Fair presentation does not entertain presenting claims for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor." (citations and quotation marks omitted)).

However, it is clear that a federal court has the authority to deny a habeas claim on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998); <u>Woods v. Cain</u>, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008). Because the remaining contentions are meritless for the following reasons, it is recommended that they simply be denied on that basis in the interest of judicial economy.

As to petitioner's contention that counsel was ineffective for failing to call the individuals who prepared the video and cell phone photographs to testify, the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony,*

*and showing that the testimony would have been favorable to a particular defense.*
This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets

omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner

must name the witness, demonstrate that the witness was available to testify and would have done

so, set out the content of the witness's proposed testimony, and show that the testimony would

have been favorable to a particular defense.").

Here, petitioner presented no evidence showing that the uncalled individuals were available

to testify and would have testified in a manner beneficial to the defense. Therefore, petitioner

obviously failed to meet his burden of proof with respect to this claim. See, e.g., United States v.

Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of

ineffective assistance of counsel when the only evidence of a missing witness's testimony is from

the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July

7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29,

2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a

petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on

that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844,

at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar

matter, from the alleged favorable witnesses suggesting what they would have testified to, claims

of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No.

6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit

(or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

As to petitioner's contention that counsel was ineffective for failing to object to the State's failure to provide notice of its intent to use the video and cell phone photographs, it has been noted:

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios-Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) (quotation marks omitted); accord Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Forman v. Cain, Civ. Action No. 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14, 2008). Moreover, the United States Supreme Court has clearly held:

> *Judicial scrutiny of counsel's performance must be highly deferential.* It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.*

Strickland, 466 U.S. at 689 (citation and quotation marks omitted; emphasis added).

Here, even if counsel's strategic decision could be considered deficient performance, petitioner's claim would still fail because he cannot show the prejudice required to support his claim. At best, a successful objection based on lack of notice would merely have resulted in the state being precluded from introducing the video and cell phone photographs. However, that

evidence was hardly crucial in light of the other overwhelming evidence of petitioner's guilt, especially the compelling testimony of the victims. Therefore, there is no reasonable probability that the result of the proceeding would have been different if only counsel had successfully challenged the introduction of the video and cell phone photographs.

For all of these reasons, petitioner's ineffective assistance of counsel claim should be denied.

## H. Translator

Petitioner's eighth claim is that the trial court abused its discretion in allowing a biased person to serve as a translator at trial. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In pro se assignment of error number 3, the defendant argues the trial court erred in allowing a biased person who had a substantial interest in the proceedings to be called as an interpreter for the proceedings. …
>
> ….
>
> With respect to the translator, a hearing was held at the request of the defense during trial but outside the presence of the jury "as to the translator and what he's reporting." Ricardo Aldape testified that he had been translating in the "tri-parish" area for approximately fifteen years. He had done work for the Houma Police Department, the Terrebonne Parish Sheriff's Office, the District Attorney's Office, and the Office of the Public Defender. Defense counsel asked Aldape if he was summarizing testimony while translating rather than reporting it word-for-word. Aldape denied summarizing testimony and stated that he was interpreting "their language versus mine, which is still Spanish but they have a difference on it." The trial court ordered Aldape "to translate as literal as possible" and allowed defense counsel the opportunity to re-question witnesses to clear up two non-literal translations.
>
> The trial court did not abuse its discretion by allowing Aldape to translate testimony. The trial court held a hearing on the accuracy of the translations, allowed the defense to explore Aldape's qualifications and possible bias, and ordered Aldape "to translate as literal as possible." Pro se assignment of error number 3 is without merit.[34]

---

[34] State v. Roussell, No. 2012 KA 1792, 2013 WL 3875046, at *11-13 (La. App. 1st Cir. July 25, 2013); State Rec., Vol. 3 of 4.

The Louisiana Supreme Court then denied petitioner's related writ applications without assigning additional reasons.[35]

The Court will accept as a given the proposition that a court interpreter should be qualified and unbiased.  See United States v. Ball, 988 F.2d 7, 9-10 (5th Cir. 1993) ("It is well established that an interpreter must have no interest in the outcome of a criminal proceeding if he or she is to act in his or her professional capacity during the course of those proceedings.); Lujan v. United States, 209 F.2d 190, 192 (10th Cir. 1953) ("While in the nature of things, a disinterested interpreter is essential to an impartial interpretation of a witness' testimony, at the same time the trial court is necessarily accorded a wide discretion in determining the fitness of the person called, and the exercise of that discretion will not be disturbed on review in the absence of some evidence from which prejudice can be inferred.").

Here, however, petitioner presented no evidence of actual bias; rather, he simply speculates that the translator may have been biased because he had in the past acted as an interpreter for the Houma Police Department, the Parish Sheriff's Office, and the District Attorney's Office.[36]  Such speculation is unreasonable, in that there is no basis to conclude that such prior employment so taints a translator as to preclude him from acting as a court interpreter in an unrelated matter.

Even more importantly, petitioner offers no citation to controlling authority supporting his contention.  That alone dooms his claim, because, as previously noted, a federal habeas court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary

---

[35] State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-K-2047); State v. Roussell, 134 So.3d 1193 (La. 2014) (No. 2013-KO-2070); State Rec., Vol. 3 of 4.
[36] See Rec. Doc. 1, pp. 42-43.

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Where, as here, a petitioner cites no Supreme Court jurisprudence and the Court's research locates no such jurisprudence, there is no basis for a finding that the state court's decision was "contrary to" Supreme Court precedent. Further, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). Therefore, this claim should be denied.

## I. Improper Juror

Petitioner's ninth and final claim is a juror's failure to disclose his "job status" during voir dire resulted in petitioner being denied his right to an impartial jury. Specifically, petitioner alleges that "Derek P. Soulet gave false information when he informed the court that his job status was that of real estate, when in actuality he worked for the Terrebonne Parish Consolidated Government, at the Terrebonne Parish Criminal Justice Complex assigned to the medical department."[37] In the state post-conviction proceedings, this claim was denied by the state district court,[38] the Louisiana First Circuit Court of Appeal,[39] and the Louisiana Supreme Court.[40] Although those courts did not assign reasons for denying the claim, the United States Supreme Court has held that, in such instances, a federal habeas court is still bound the AEDPA's deferential standards of review because the claim is presumed to have been denied on the merits:

[37] Rec. Doc. 1, p. 47.
[38] State Rec., Vol. 3 of 4, Judgment dated October 22, 2015.
[39] State v. Roussell, No. 2016 KW 0058 (La. App. 1st Cir. Mar. 7, 2016); State v. Roussell, No. 2016 KW 0313 (La. App. 1st Cir. May 2, 2016); State Rec., Vol. 3 of 4.
[40] State v. Roussell, 208 So.3d 371 (La. 2017); State Rec., Vol. 4 of 4.

By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

There is no merit to the assertion that compliance with § 2254(d) should be excused when state courts issue summary rulings because applying § 2254(d) in those cases will encourage state courts to withhold explanations for their decisions. Opinion-writing practices in state courts are influenced by considerations other than avoiding scrutiny by collateral attack in federal court. At the same time, requiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition. The issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed.

There is no merit either in [petitioner's] argument that § 2254(d) is inapplicable because the [state court] did not say it was adjudicating his claim "on the merits." The state court did not say it was denying the claim for any other reason. When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. Cf. Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).

The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely.

Harrington v. Richter, 562 U.S. 86, 98-100 (2011) (citations omitted). Petitioner fails to rebut the presumption, and, therefore, the deferential standards of review apply to this claim.

Although the state courts did not give their reasons for denying relief, those reasons are not difficult to surmise. As the state noted both in its response to petitioner's state post-conviction

application[41] and to petitioner's federal application,[42] petitioner submitted no evidence in support of his contention that Soulet in fact worked at the jail at the time of the trial, and the state contended that his employment as a part-time Emergency Medical Technician at the jail did not commence until *after* petitioner's trial.

Because petitioner failed to meet his burden to prove the underlying facts on which his claim was premised, it is obvious that he cannot establish that the state court decision denying his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[43]

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Calvin Andrew Roussell be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

---

[41] State Rec., Vol. 3 of 4.

[42] Rec. Doc. 12, p. 16.

[43] Out of an abundance of caution, the undersigned will also note that, in any event, a juror's past or present employment in law enforcement is not grounds for automatic disqualification. United States v. Morales, 185 F.3d 74, 83-84 (2nd Cir. 1999); United States v. Blum, 65 F.3d 1436, 1442 (8th Cir. 1995); United States v. McIntyre, 997 F.2d 687, 697 (10th Cir. 1993); United States v. Bryant, 991 F.2d 171, 174 (5th Cir. 1993); United States v. Bilecki, 876 F.2d 1128, 1130 (5th Cir. 1989); United States v. McCord, 695 F.2d 823, 828 (5th Cir. 1983); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *15 (E.D. La. Oct. 29, 2009).

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[44]

New Orleans, Louisiana, this seventh day of June, 2017.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[44] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.